**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **I.B.-L. and M.B.-L.**

**No. 21-0278** (Raleigh County 19-JA-238-D and 19-JA-239-D)


## MEMORANDUM DECISION


Petitioner Mother J.B., by counsel Lindsay Ashley Thompson, appeals the Circuit Court of Raleigh County's December 4, 2020, order terminating her parental rights to I.B.-L. and M.B.-L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, John F. Parkulo, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and miscalculating the amount of time the children had been out of her home.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in September of 2019, alleging that petitioner and the children lived in a home with several other adults and that the home was in deplorable condition, which was unsafe for the children. Further, the DHHR alleged that all of the adults in the home had been arrested on drug trafficking charges following a long-term investigation by the Federal Bureau of Investigation and the Raleigh County Drug and Violent Crime Task Force, and, as a result, the children were left without an appropriate caretaker. Based on the foregoing, the DHHR alleged that the children were abused and neglected. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In December of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. In March of 2020, the DHHR filed a court summary, indicating that petitioner had entered into an inpatient rehabilitation program and was testing negative for drugs. The DHHR also indicated that petitioner was attending group therapy. In July of 2020, the circuit court held a review hearing, during which it was advised that petitioner was testing positive for drugs despite remaining in her rehabilitation program. Petitioner requested a three-month extension of her improvement period, and the circuit court granted her motion.

The circuit court held a hearing in October of 2020, wherein the DHHR sought the termination of petitioner's improvement period and her parental rights. The director of the Raleigh County Day Report Center testified that, a few days prior to the hearing, petitioner submitted to two drug screens, both of which were positive for methamphetamine and amphetamine. The director testified that, in total, petitioner had submitted twelve positive screens for methamphetamine and amphetamine and had missed ten screens. The director opined that, based on petitioner's frequent use of methamphetamine, she had not made significant improvement in her drug rehabilitation program and that it was unlikely that she would overcome her addiction in the near future. The director explained that "[m]ethamphetamine is an extremely powerful substance [for which], unfortunately, we have no medical means of aiding treatment."

A Child Protective Services ("CPS") worker testified and acknowledged that petitioner had complied with certain aspects of her improvement period, such as obtaining housing and employment, participating in parenting classes, and attending inpatient and outpatient drug treatment. The worker further testified that petitioner's visits with the children went well, and she was granted one overnight visit with them. However, the CPS worker also testified that petitioner continued to fail drug screens, both in her treatment program and at the day report center. Further, the CPS worker stated that petitioner allowed the father, whose parental rights had been terminated, to contact the children during some visits, and that I.B.-L. reported that she did not want to be returned to petitioner's care because she was afraid of being removed by CPS again.

Petitioner testified that she had a relapse on methamphetamine after leaving her inpatient treatment program but contacted her treatment program to see if she could be readmitted into the program. Petitioner also testified that she had obtained housing and employment. Petitioner denied that she allowed the father to contact the children during her visits.

Following petitioner's testimony, the circuit court found that it had "no faith at this point that the children would be safe" with petitioner given her methamphetamine abuse. The circuit court found that petitioner went through an inpatient program and seemingly graduated from the program only to test positive for methamphetamine as soon as she was released. As such, the circuit court determined that petitioner failed to comply with her improvement period and terminated the same. The circuit court ordered petitioner to continue to submit to drug screens and scheduled the dispositional hearing.

The circuit court held a dispositional hearing in December of 2020. A CPS worker testified that since the prior hearing, petitioner had submitted more positive screens. In fact, on the day

before the prior hearing, petitioner tested positive for methamphetamine, norbuprenorphine, fentanyl, and norfentanyl; and on the day after the prior hearing, she tested positive for buprenorphine and norfentanyl. Further, petitioner missed seven screens and then tested positive for methamphetamine immediately prior to the dispositional hearing.

An employee from the day report center testified that petitioner submitted to a drug screen prior to the dispositional hearing and that the instant results were positive for methamphetamine. According to the employee, petitioner submitted five positive drug screens following her completion of drug treatment and missed several other screens.

Petitioner testified and reiterated that she previously completed inpatient treatment, obtained housing, and obtained employment. She further testified that, following her relapse, she started attending outpatient treatment through the same facility where she had her prior inpatient treatment. Petitioner acknowledged her addiction issues and stated she would return to inpatient treatment if directed by the circuit court. She also admitted that she failed to successfully complete her improvement period. However, petitioner characterized her relapse as a minor setback and denied that she had recently abused methamphetamine, despite the results from her screen earlier that day.

At the conclusion of the hearing, the circuit court found that petitioner deluded herself into thinking that she did not have a major setback in her drug treatment. The circuit court found that petitioner was using drugs that were "absolutely the worst . . . end of the spectrum. Methamphetamine, fentanyl, norfentanyl, those are things that kill[] people." The circuit court commended petitioner for completing drug treatment but found that, since she was released, she immediately began actively using drugs. The circuit court concluded that, due to petitioner's addiction, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. While referring to the length of time the children had been in foster care, the circuit court commented that "we're not right now [at] 15 out of the last 24 months, but we certainly would be if I extended this. We're getting right up on the cusp of that." Accordingly, the circuit court terminated petitioner's parental rights to the children. It is from the December 4, 2020, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[2]The father's parental rights were also terminated below. The permanency plan for the children is a subsidized legal guardianship with their foster parents.

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. According to petitioner, the circuit court failed to acknowledge her substantial compliance with the terms and conditions of her improvement period. Petitioner avers that testimony established that she completed inpatient and outpatient drug treatment, obtained and maintained housing and employment, completed parenting classes, and actively participated in visits with the children. Moreover, petitioner admitted to her relapse and took steps to re-enter outpatient drug treatment. As such, petitioner argues that the circuit court should have granted her an extension of her improvement period rather than terminating her parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Petitioner correctly asserts that she complied with many of the terms of her improvement period. However, after graduating from her inpatient treatment program, petitioner relapsed and consistently tested positive for methamphetamine and amphetamine. Indeed, petitioner tested positive for methamphetamine on the day of the dispositional hearing, demonstrating that she remained in active addiction. This Court has held that

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Petitioner's continued addiction to drugs, despite her completion of a drug treatment program, demonstrated that her compliance with services was insufficient to justify the return of the children to her care. The circuit court specifically found that, given petitioner's methamphetamine abuse, the children would not be safe if returned to her care.

While petitioner argues that she should have been granted an extension of her improvement period, West Virginia Code § 49-4-610(6) provides that

> A court may extend any improvement period granted pursuant to subdivision (2) or (3) of this section for a period *not to exceed three months* when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

(Emphasis added). Here, petitioner had already been granted a three-month extension of her improvement period in July of 2020. The record is clear that, after graduating from her inpatient treatment program around August of 2020, petitioner continued to test positive for methamphetamine. Thereafter, the circuit court found that continuing her improvement period would not be in the children's best interests. We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's inability to address her drug abuse on her own or with help, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Consequently, we find that the circuit court did not err in terminating her parental rights.

Lastly, petitioner argues that the circuit court erroneously calculated the number of months the children were in foster care. However, petitioner acknowledges in her brief on appeal that the circuit court was aware that the children had not been in foster care for fifteen months, noting that they were "on the cusp" of that timeframe. In any event, petitioner's argument is without merit as there was sufficient evidence to terminate her parental rights based upon her continued, consistent abuse of methamphetamine despite the provision of services, as set forth above, and she cites to no authority prohibiting a circuit court from terminating a parent's parental rights earlier than fifteen months into the proceedings. Therefore, we find no error in the circuit court's consideration of the length of time the children had been in foster care in its decision to terminate petitioner's parental rights.[3]

---

[3]While we find no error in the circuit court's consideration of the length of time the children had been in foster care when determining the appropriate disposition, we remind the parties that West Virginia Code § 49-4-605(a)(1) does not mandate that termination of parental rights occur after fifteen months. Rather, it provides that

(continued . . .)

5

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 4, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton

---

the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home.

As such, West Virginia Code § 49-4-605(a)(1) simply requires the DHHR to seek termination of a parent's parental rights if the above-mentioned timeframes are met.

6